UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NATHANIEL V. ALLEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CAUSE NO. 1:04-CV-60 |
| | ) |
| FORT WAYNE FOUNDRY CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

On January 6, 2003, within eight months of being hired by Defendant Fort Wayne Foundry Corporation ("FWF"), Plaintiff Nathaniel Allen failed to report for his scheduled overtime shift, triggering his twelfth and final attendance point violation and subsequent discharge by FWF for excessive absenteeism. (Compl. ¶¶ 3, 5; Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4; Def.'s Mot. for Summ. J., Ex. 13.) Allen, however, disagrees with FWF's action, adamantly contending that he notified FWF of his need for leave for the relevant shift under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*. (Aff. of Nathaniel Allen ¶¶ 5, 6.) Consequently, Allen brings this action against FWF, asserting that it wrongfully denied him the substantive benefits of the FMLA, and then retaliated against him by terminating his employment for his requesting and taking FMLA leave.[1] (Compl. ¶ 7.)

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. (*See* Docket # 18.) Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.
    Allen also vaguely eludes to a claim of fraud against FWF in his complaint (*see* Compl. ¶ 8); however, Allen fails to argue this claim in his response brief and the Court thus deems Allen to have abandoned it. *See, e.g.,*

FWF moved for summary judgment on all of Allen's claims. (Docket # 29.) FWF first argues that Allen was not eligible for, and thus never entitled to, FMLA benefits because he worked for FWF less than twelve months. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 11-15.) In the alternative, FWF contends that even if he was eligible, Allen fails to produce sufficient evidence to support his contention that FWF wrongfully considered his absence from work on January 6, 2003, as a violation of the attendance policy, rather than as an excused FMLA absence. (*Id*. at 15-16.) While its first argument fails to win the day, FWF's alternative argument is supported by the record and thus its motion for summary judgment will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

FWF operates three aluminum foundries and a machining division that produce engine components for General Motors Corporation. (Aff. of David Lorey ¶ 6.) FWF employs production and maintenance employees who, after sixty days on the job, are exclusively represented by UAW Local 1101 (the "Union") pursuant to a Collective Bargaining Agreement (the "CBA") dated February 1, 2000, between FWF and the Union. (*Id*. ¶ 8; Def.'s Mot. for Summ. J., Ex. 3 at 1.)

Significant to the instant action, the CBA sets forth an attendance policy in which points are assessed to employees for tardiness or unexcused absences and subtracted for perfect attendance, causing an employee to strive to accumulate as few points as possible. (Def.'s Mot.

---

*Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding that arguments not presented to the court in a response to a summary judgment motion are deemed waived).

[2] For summary judgment purposes, the facts are recited in the light most favorable to Allen, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

for Summ. J., Ex. 3 at 45-47; Lorey Aff. ¶ 19.)  The specific attendance point assessments and deductions are as follows:

| | |
|---|---|
| Absence for a full work day with no report | Two points |
| Absence for a full work day | One point |
| Tardy more than two hours | Three-quarters of a point |
| Leave early more than two hours | Three-quarters of a point |
| Tardy two hours or less | One-half of a point |
| Leave early two hours or less | One-half of a point |
| Doctor's slip | (Deduct one-half value) |
| Perfect attendance for sixty consecutive calendar days | (Deduct one point) |

(Def.'s Mot. for Summ. J., Ex. 3 at 45-47.)  Upon accumulation of points in any rolling twelve-month period, an employee becomes subject to the following disciplinary action: (1) four points, verbal warning; (2) eight points, written warning; (3) ten points, one-day unpaid suspension; and (4) twelve points, termination. (*Id*.)  The attendance policy also contains an absence notification provision, which requires an employee to notify FWF no later than two hours following the start of the shift if he cannot report to work, and in the event of tardiness, the employee is to call or send word as early as possible advising FWF of the approximate time he expects to arrive. (*Id*.)

Allen began his employment as a production and maintenance employee with FWF in May 2002, typically working the third shift from 10:00 p.m. to 6:00 a.m. (Compl. ¶ 3; Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.)  He also was intermittently scheduled for overtime work, which often required him to arrive in advance of his normal start time. (Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.)  Almost immediately after Allen completed his initial sixty-day probationary period and became a member of the Union, he began rapidly accumulating attendance points due to absenteeism. (Def.'s Mot. for Summ. J., Exs. 6-8, 10.)  These points resulted in Allen receiving a verbal disciplinary warning in early August 2002, a written disciplinary warning in

3

late August 2002, and a one-day unpaid suspension in early September. (*Id*.)

On November 5, 2002, when he had accumulated ten attendance points and worked more than 1,250 hours for FWF, Allen submitted to FWF a written request for intermittent FMLA leave, explaining that he needed to help care for his wife, who suffers from diabetes and anemia.[3] (Compl., Ex. A; Def.'s Mot. for Summ. J., Ex. 10.)  FWF granted Allen's request effective November 13, 2002, initially for one month, and later extended its approval through December 13, 2003. (Compl., Ex. A.; Lorey Aff. ¶¶ 11, 13.)  FWF's basis for approving Allen's FMLA request arose from the following provision of the CBA:

> As of the inception of this Agreement any eligible employee (as defined in the Family and Medical Leave Act of 1993) is entitled to unpaid leave in accordance with the Family and Medical Leave Act of 1993 as that law now exists, is amended, or interpreted in the future.  Nothing herein shall abridge the rights of employers as defined in said Act.  Family medical leave will run concurrently with paid disability time off and/or paid personal days available to the employee. *The Company agrees to provide FMLA privileges for all employees as soon as they have worked 1250 hours in the facility*.

(Def.'s Mot. for Summ. J., Ex. 3 at 15-16) (emphasis added).

After FWF granted Allen's intermittent FMLA leave, Allen missed work fourteen times for FMLA reasons between November 13, 2002, and January 5, 2003. (*Id*., Ex. 10.)  While all of these FMLA absences were excused, Allen also accumulated two additional unexcused absences during this period, one for arriving late and leaving early on his November 29/30 shift due to car trouble, and the other for missing his December 18/19 shift due to a car accident, for which he produced a doctor's note. (*Id*., Exs. 9-11.)  Pursuant to the attendance policy, FWF penalized Allen three-quarters of a point for the November 29/30 incident and one-half of a point for the

---

[3]FWF apparently agrees that Allen's wife's illness meets the requirements of a "serious health condition" under the FMLA, as it does not raise this issue.

December 18/19 absence, causing Allen's attendance point tally to total eleven and one-quarter points. (*Id*.)  Allen does not dispute any of these unexcused absences nor the points awarded for them by FWF.

The pivotal absence that triggered Allen's ultimate termination and this suit occurred on the evening of January 6, 2003.[4] (Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.)  Allen arrived at 10:00 p.m. on the day prior, January 5, for the start of his regular eight-hour shift, but left early for FMLA reasons at 2:00 a.m. on January 6 after his wife called him at work. (*Id*.)  While his early departure on January 6 was an excused FMLA absence, Allen later that day failed to report for his four-hour overtime shift scheduled to begin at 6:00 p.m.[5] (*Id*.)  FWF, having no record of a call-in from Allen for the shift, completed a Notice of Tardy/Absence slip recording "NC/NS Early O.T." (indicating a failure to call or show up for the scheduled overtime shift) for Allen. (*Id*.)  FWF's records show that Allen did arrive later that night at 10:00 p.m. for his regular shift and worked until 6:00 a.m. on January 7, and then returned on the evening of January 7 at 10:00 p.m. and worked until 6:00 a.m. on January 8. (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Exs. 18, 19.)  While it took FWF until January 24 to review and tally his outstanding attendance points, it was Allen's failure to report for his four-hour overtime shift on January 6 that triggered the award of three-quarters of a point under the attendance policy and Allen's fatal point tally of twelve. (*Id*., Ex. 20; Lorey Aff. ¶ 16.)

On January 24, FWF met with Allen and terminated his employment for excessive

---

[4]Hereafter, all dates set forth in this opinion are in calendar year 2003, unless otherwise indicated.

[5]As will be discussed *infra*, while Allen vehemently argues the events of January 7, he never disputes FWF's recording of his "no call/no show" absence from his scheduled overtime shift on January 6. (Allen Aff. ¶¶ 5, 6.)

5

absenteeism under the terms of the CBA. (Def.'s Mot. for Summ. J., Ex. 13.)  In its Corrective Action and Discharge Notice, FWF represented Allen's date of infraction as January 7, it appearing from the record that FWF generally dates its attendance calendar for third shift employees on the date that the shift ends, rather than the date the shift commences. (*Id*., Ex. 12.) In the meeting, Allen expressly disagreed with FWF's action, asserting that he had indeed called-in and notified FWF of his need for FMLA leave on January 7.[6] (*Id*., Ex. 13.)  Later, in his affidavit filed in this action on August 12, 2005, Allen specifically recalled the events of January 6, 7, and 8 as follows:

> I remember particularly an occasion around the first week of January 2003, that I needed FMLA leave for three consecutive days;  I remember taking part of an FMLA leave on January 6, 2003, a full day of FMLA leave on January 7, 2003, and a FMLA day on January 8, 2003.  For each of these days, I followed the procedure, I talked to my supervisor and called by telephone, if I was home, and informed the supervisor or his designee about my need for taking FMLA; *I have reviewed the records by Fort Wayne Foundry as to what happened on January 6, January 7, and January 8, 2003*, and I cannot explain why there is no "Notice of Tardy/Absence" dated January 7, 2003 – other than to say that I know I called because my wife was sick for three consecutive days and I called in each and every day and informed my employer that I needed to take FMLA. . . .
> I told my Supervisor that *I called in on January 7, 2003 and I specifically remember calling on that date and asking for FMLA time* . . . and I remember specifically telling the manager/supervisor who gave me notice of the termination that most of my attendance problems were as a result of taking FMLA for my wife's serious health condition (and *I specifically remember calling in on January 7, 2003 and telling the supervisor that I needed that day off for FMLA*) . . . .

(Allen Aff. ¶¶ 5, 6.)

Despite Allen's disagreement with FWF's action, he did not file a grievance to protest FWF's decision in accordance with the grievance procedure under the CBA. (Lorey Aff. ¶ 18.)

---

[6] While Allen incurred ten additional absences between the period of January 8 and January 23, the parties do not dispute that Allen properly notified FWF of the need for FMLA leave for nine absences and used his paid birthday holiday for one absence; thus no attendance points were assessed. (Def.'s Mot. for Summ. J., Ex. 12; Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.)

The grievance procedure is a mandatory procedure, providing that: "No employee shall pursue any remedy at law against the Company or the Union under any provision of this contract until, as a condition precedent to such action, they shall have first exhausted their remedies under the grievance procedure . . . ." (Def.'s Mot. for Summ. J., Ex. 3 at 8-12.) Pursuant to its standard policy of investigating all terminations, the Union did in fact investigate Allen's discharge and chose not to challenge FWF's decision. (Lorey Aff. ¶¶ 16, 17.)

Consequently, on January 27, 2004, Allen filed a complaint against FWF in Allen Superior Court. (Docket # 1.) FWF then removed the action to this Court on February 26, 2004, and moved for summary judgment on July 6, 2005. (Docket # 2, 29.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there

is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

FWF argues that Allen was not eligible for, and thus never entitled to, FMLA benefits because he worked for FWF less than twelve months. Alternatively, FWF contends that even if he was eligible, Allen failed to produce sufficient evidence to support his contention that FWF wrongfully considered his absence from work on January 6 as a violation of the attendance policy, rather than an excused FMLA absence.  FWF's alternative argument ultimately wins the day, and thus the Court will discuss it first.[7]

### A.  *Allen Fails to Show that FWF Violated His Substantive Rights Under the FMLA*

The FMLA affords eligible employees certain substantive rights, and it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1); *see also Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001).  However, these substantive rights do not include "an entitlement to any right, benefit, or condition to which the employee would not have been entitled if the leave had not been taken." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000).

If an employee argues that his employer interfered with his substantive rights under the FMLA, the employee must "establish, by a preponderance of the evidence, that he is entitled to the benefit he claims." *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997).  It is then up to the employer to present evidence to show that the employee would not have been

---

[7]As will be discussed *infra* in Section IV-C, the Court at present presumes, and will later find, that Allen was eligible for FMLA leave.

entitled to the benefit even if he had not taken FMLA leave. *Kohls*, 259 F.3d at 804.  Finally, the employee must then attempt to overcome the employer's assertion, as the employee ultimately carries the burden of demonstrating his right to the entitlement. *Id.*; *Rice*, 209 F.3d at 1018.

Here, Allen argues that he was entitled to, requested, and used FMLA leave on January 7, and FWF interfered with his substantive FMLA rights by later denying him FMLA leave for such date, triggering the termination of his employment.  In response, FWF contends that by January 7, Allen had already accumulated his fatal attendance infraction by failing to report or call-in for his overtime shift on January 6, and therefore Allen's contentions about January 7 are irrelevant and fail to create a genuine issue of material fact.  Thus, FWF believes that notwithstanding its approval of Allen's intermittent FMLA leave, it properly terminated him under the terms of the attendance policy in the CBA for failure to comply with its absence notification procedure.

The FMLA provides that "[a]n employer may . . . require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d).  In *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969 (7th Cir. 2000), Gilliam, who went on FMLA leave, was terminated when he failed to comply with a provision in the collective bargaining agreement that required an employee to call his supervisor no later than the beginning of the third day of leave in order to let the supervisor know how much leave would be required.  The Seventh Circuit, citing 29 C.F.R. § 825.302(d), determined that Gilliam's termination did not violate federal law, emphasizing that "[n]othing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans." *Id.* at 972.  Likewise,

9

the Seventh Circuit affirmed a judgment in favor of the employer in *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706 (7th Cir. 2002), when Lewis, who had used FMLA leave, was terminated after she accumulated three offenses under the attendance policy by failing to comply with Holsum's policy of calling-in to notify her supervisor of her absence at least one hour in advance of each shift that she was scheduled to work.[8] *See also Hammond v. Interstate Brands Corp.*, No. IP 01-0066-CM/S, 2002 WL 31093603, at *13-14 (S.D. Ind. Aug. 28, 2002) (holding that employer's termination of employee, who was on FMLA leave, due to her failure to comply with employer's policy of calling-in when she was going to be absent from work did not violate her rights under the FMLA); *Bones v. Honeywell Int'l, Inc.*, 223 F. Supp. 2d 1203, 1217-18 (D. Kan. 2002) (finding that employer's no call/no show rule was reasonable and by failing to comply with it, plaintiff failed to give proper notice under the FMLA).

In the instant case, FWF assessed Allen three-quarters of a point – the expected consequence under the attendance policy for tardiness of more than two hours – when Allen failed to report or call-in for his four-hour overtime shift scheduled to begin at 6:00 p.m. on January 6.[9] In support of its action, FWF offers the following personnel/payroll records: (1) a

---

[8] In *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713 (6th Cir. 2003), the Sixth Circuit criticized the Seventh Circuit's decision in *Lewis*, contending that an employer cannot deny FMLA relief for failure to comply with its internal notice procedures when those procedures are more stringent than the FMLA's requirements, pointing to 29 C.F.R. § 825.302(d) which states that "failure to follow . . . internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." Timely notice under the FMLA for unforeseeable leave has been interpreted to mean within at least two days upon the employee's return to work after taking FMLA leave. *See Scott v. Cintas Corp.*, No. 03 C 882, 2003 WL 22048055, at *2 (N.D. Ill. Aug. 29, 2003); *Levin v. Children's Museum of Indianapolis, Inc.*, No. IP00-0715-C-H/G, 2002 WL 1800254, at *9-10 (S.D. Ind. July 1, 2002); *Zawadowicz v. CVS Corp.*, 99 F. Supp. 2d 518, 530 n.10 (D.N.J. 2000). Regardless, Allen never argues that he requested FMLA on a retroactive basis for his absence, and even if he did, it would be considered untimely since other than his alleged call-in on January 7, it was not until January 24 when he first retroactively expressed his need for FMLA leave for January 7.

[9] Neither party disputes that Allen requested and used FMLA leave when he left at 2:00 a.m. on January 6, instead of his scheduled 6:00 a.m. Rather, this dispute centers on Allen's alleged failure to report or call-in for his overtime shift scheduled to begin at 6:00 p.m. later that day.

10

handwritten Notice of Tardy/Absence dated January 6, recording Allen as a "NC/NS Early O.T."; (2) a handwritten attendance log with an entry dated January 7, recording "NC/NS Early O/T - 4.00"; (3) a computer-generated Punch Detail Report, showing that Allen reported to work at 9:56 p.m. on January 6 and left at 6:00 a.m. on January 7, with a handwritten "NC/NS Early O/T" next to the entry; and (4) a computer-generated personnel report for Allen showing that he reported at 9:50 p.m. on January 5 and left at 2:00 a.m. on January 6, working four hours; reported at 9:56 p.m. on January 6 and left at 6:00 a.m. on January 7, working eight hours; and reported at 9:52 p.m. on January 7 and left at 6:00 a.m. January 8, working eight hours. (Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.; Def.'s Mot. for Summ. J., Ex. 12; Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Exs. 18, 19.) FWF emphasizes that by January 6, Allen had simply painted himself into a corner due to his numerous prior unexcused absences, and FWF merely rendered the consequence due under the attendance policy for Allen's missed overtime shift as it would to any other employee.[10]  Thus FWF argues that because Allen's fatal point total of twelve occurred as of January 6, Allen's arguments regarding his call-in and request for FMLA leave on January 7 are simply irrelevant and fail to create a genuine issue of material fact.

      As Allen recalls the events, however, which is the story the Court must credit at this stage of the proceedings, *see Payne*, 337 F.3d at 770, he took "part of an FMLA leave on January 6, 2003, a full day of FMLA leave on January 7, 2003, and a[n] FMLA day on January 8, 2003." (Allen Aff. ¶ 5.)  He then states:  "For each of these days, I followed the procedure, I talked to my supervisor and called by telephone, if I was home, and informed the supervisor or his

---

[10]FWF states that it is aware of no instance in which an employee of the machining division with less than one year of service reached or exceeded twelve attendance points and was not terminated. (Lorey Aff. ¶ 24.)

11

designee about my need for taking FMLA . . . ."[11] (*Id*.)  Allen further reports that he "reviewed the records by Fort Wayne Foundry as to what happened on January 6, January 7, and January 8 and . . . cannot explain why there is no 'Notice of Tardy/Absence' dated January 7 . . . ." (*Id*.)  While Allen's story coincides with FWF's first Notice of Tardy/Absence recording his excused early departure for FMLA leave at 2:00 a.m. on January 6, curiously Allen does not dispute the second Notice of Tardy/Absence in his personnel record dated that same day that reflects his fatal no call/no show status for the overtime shift, a Notice he undoubtedly reviewed since he attached it as an exhibit to his response brief. (*See* Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.)  Instead, Allen adamantly argues in his response brief and articulates in his affidavit (the relevant portion is set forth *supra* in its entirety), three times no less, that he specifically remembers calling-in for FMLA leave on January 7 and "telling the supervisor that I needed that day off for FMLA." (Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J. at 7; Allen Aff. ¶ 6.)

The problem with Allen's argument is that by January 7 he was already subject to discharge for his missed overtime shift on January 6, and thus all of his assertions regarding calling-in and taking FMLA leave on January 7, when taken as true, fail to change that state of affairs.  One wonders why, after reviewing FWF's records, Allen presents his arguments as he does; perhaps Allen's recollection of events was triggered by FWF dating its Corrective Action and Discharge Notice as of January 7, rather than January 6, causing some confusion on Allen's

---

[11] While Allen recites the general procedure for requesting FMLA leave in his affidavit, he does not offer any more detailed information regarding his purported call of January 7, such as his specific location when he made the call, the time of day, or if anyone witnessed the reporting.

12

part regarding the dates.[12]  Nonetheless, in determining whether a genuine issue of material fact exists, the Court need draw only reasonable inferences in favor of the non-moving party, not every conceivable inference. *Chapple v. Nat'l Starch & Chem. Co. and Oil*, 178 F.3d 501, 504 (7th Cir. 1999).  Allen chose to articulate his theory of the case in the manner that he has focusing on the events of January 7, and because he has done so, no material dispute of fact that requires a trial exists in this case. *See Payne*, 337 F.3d at 772-73 (emphasizing that affidavit failed not because it was self-serving, but rather because it did not "set forth specific facts showing that there is a genuine issue for trial").  Stated another way, on the record presented, no reasonable jury could conclude that Allen was denied substantive rights under the FMLA by FWF considering his absence from his overtime shift on January 6 as unexcused. *See Walker v. Abbott Labs.*, 416 F.3d 641, 645 (7th Cir. 2005) (granting summary judgment in an employment discrimination case because no reasonable jury confronting the record presented by the plaintiff could conclude that the alleged discrimination occurred); *see also Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211 (7th Cir. 1993) (affirming summary judgment where plaintiff's statement that was based on vague and somewhat conflicting recollection failed to create a genuine issue of fact, emphasizing plaintiff might have fared better if he had obtained other employees' supporting testimony); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1573 (7th Cir. 1989) (affirming summary judgment when evidence was so one-sided that a trial would be

---

[12] Allen does not dispute that FWF's attendance records show that he called-in and took FMLA leave for three consecutive shifts on January 9, 10, and 11. (*See* Supplement to Answer Br./Resp. in Opp'n to Def.'s Mot. for Summ. J., Attach. No. 4.)  Perhaps these dates, rather than January 6, 7, and 8, explain this excerpt from his affidavit: "I remember particularly an occasion around the first week of January 2003, that I needed FMLA leave for three consecutive days . . . I cannot explain why there is no 'Notice of Tardy/Absence' dated January 7, 2003 – other than to say that I know I called because my wife was sick for three consecutive days and I called in each and every day . . . ." (Allen Aff. ¶ 5.)

"an exercise in futility for the plaintiff"). Accordingly, FWF's motion for summary judgment will be granted with respect to Allen's claim that FWF violated his substantive rights under the FMLA.

### B.  Allen Fails to Show that FWF Retaliated Against Him for Requesting and Taking FMLA Leave

In addition to creating substantive rights, the FMLA affords employees protection in the event they are discriminated against for exercising their rights under the FMLA. *King v. Preferred Technical Group*, 166 F.3d 887, 891-92 (7th Cir. 1999) ("[A]n employer may not consider the taking of FMLA leave as a negative factor in employment actions."). A plaintiff alleging employment discrimination can contest summary judgment by using either the direct or indirect method of proof. *Id.* The direct method requires the plaintiff to produce enough evidence, whether direct or circumstantial, *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994), to create a triable issue of whether the adverse employment action had a discriminatory motivation, *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997).[13]

A retaliation claim, like other discrimination claims, argued under the indirect method of proof follows the familiar *McDonnell Douglas* model as clarified by the Seventh Circuit in *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 641, 644 (7th Cir. 2002). *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *see generally McDonnell Douglas Corp.*

---

[13]Direct evidence is essentially "an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). In the absence of direct evidence, circumstantial evidence must compose "a convincing mosaic of discrimination against the plaintiff." *Troupe*, 20 F.3d at 737. This circumstantial evidence is of three general types: (1) suspicious timing, ambiguous statements, or behavior toward other employees; (2) evidence that similarly situated employees were treated differently; or (3) evidence that the employee did not deserve termination and that the employer's reason for termination is a pretext for discrimination. *Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003).

*v. Green*, 411 U.S. 792, 802 (1973).  First, the plaintiff must establish a *prima facie* case by showing that (1) after engaging in protected activity; (2) only he, and not any similarly situated employee who did not engage in the protected activity; (3) was subjected to an adverse employment action; (4) even though he was performing his job in a satisfactory manner. *Stone*, 281 F.3d at 644; *Buie*, 366 F.3d at 503.  If this case is made, the defendant must proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Stone*, 281 F.3d at 644; *Buie*, 366 F.3d at 503.  The burden then falls on the plaintiff to show that the proffered reason is merely pretextual. *Stone*, 281 F.3d at 644; *Buie*, 366 F.3d at 503.

      Here, while Allen lobs conclusory assertions that FWF retaliated against him in terminating his employment, there is a puzzling void when it comes to evidence necessary to support his allegations.  First, Allen fails to offer any direct or circumstantial evidence that FWF employed a discriminatory motive when it terminated him, thereby obviously foregoing the direct method of proof.  Then, Allen does not even attempt to discuss, much less establish, the elements of a *prima facie* case as required by the indirect method, as he fails to point to any similarly-situated employee who did not request FMLA leave, but who was treated more favorably than him. *See generally Radue*, 219 F.3d at 617-18 (to be similarly situated, two employees must have "dealt with the same supervisor, [been] subject to the same standards, and . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them").  Moreover, Allen, having accumulated eleven and one-quarter points on a twelve-point attendance scale and brandishing numerous disciplinary warnings within a relatively brief time period, can hardly be viewed as a "satisfactory" employee.  Thus, Allen's retaliation claim collapses under the indirect method of

15

proof as well.

Even assuming, *arguendo*, that Allen was able to establish a *prima facie* case, FWF has articulated a legitimate, nondiscriminatory reason for Allen's termination.  FWF simply assessed the consequence due to Allen under the attendance policy in the CBA after it recorded Allen's unexcused absence of January 6.  The burden then shifts to Allen to provide evidence that FWF's consideration of his January 6 absence as unexcused was pretextual. *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014 (7th Cir. 2000).  As long as FWF honestly believed its reasons for terminating Allen, pretext has not been shown, even if its decision was mistaken, ill-considered or foolish. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002).  In examining the record, Allen absolutely fails to show pretext, as mere speculation of pretext is insufficient. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001).  Accordingly, like Allen's substantive rights claim, FWF is entitled to summary judgment on Allen's retaliation claim.

### C.  FWF's Contention that Allen Was Not Eligible for FMLA Benefits Fails

In its briefs FWF spends a great deal of time arguing that Allen was never eligible for FMLA leave and thus, accordingly, FWF cannot be liable for his FMLA claims.  Its argument, however, is ultimately ineffective, appearing at times almost disingenuous.

Indeed, as FWF argues, the FMLA requires that in order for an employee to be eligible for FMLA benefits, he must be employed by the employer at least twelve months *and* perform 1,250 hours of service in the preceding year for such employer, *see* 29 U.S.C. § 2611(1)(A); however, the FMLA further provides that "[n]othing in this Act . . . shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides *greater* family or medical leave rights to

16

employees than the rights established under this Act . . . ." 29 U.S.C. § 2652(a) (emphasis added); *Harrell v. U.S. Postal Serv.*, 415 F.3d 700, 712 (7th Cir. 2005). Here, the CBA (the relevant portion is set forth *supra* in its entirety) specifically states that FWF "agrees to provide FMLA privileges for all employees as soon as they have worked 1250 hours in the facility"; thus, this provision on its face appears to confer a greater FMLA benefit to FWF employees such as Allen, than the FMLA would require. Yet, FWF disagrees with this interpretation, arguing that "nowhere in the labor contract or elsewhere is eligibility for coverage under the FMLA guaranteed or granted to any employee such as [Allen], who work less than 12 month[s] for FWF." (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 12.) Allen believes otherwise and argues that FWF should be estopped from asserting this ineligibility defense.

In *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 581-82 (7th Cir. 2000), the Seventh Circuit suggested that where it is clear an employee was misled by her employer's silence as to her entitlement to FMLA leave, the employer may be estopped from pleading ineligibility as a defense to the employee's FMLA claims. *See also Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 494 (8th Cir. 2002) (finding employee could have reasonably relied to his detriment on employer's representation that plaintiff's FMLA leave extended thirty-four weeks and thus estopped employer from asserting an ineligibility defense); *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 722-27 (2nd Cir. 2001) (concluding that employer who failed to post required FMLA notices and was silent regarding FMLA eligibility requirements was estopped from maintaining an ineligibility defense); *Woodford v. Cmty. Action of Greene County, Inc.*, 268 F.3d 51, 55 (2nd Cir. 2001) (acknowledging the recourse of the doctrine of equitable estoppel in an FMLA eligibility case); *Gurley v. Ameriwood Indus., Inc.*,

232 F. Supp. 2d 969, 974 (E.D. Mo. 2002) (finding that a genuine issue of material fact existed as to whether plaintiff detrimentally relied on defendant's approval of her FMLA request, thus denying defendant's motion for summary judgment based on an ineligibility argument).  Under federal law, a party may be estopped from pursuing a defense where: (1) the party makes a representation of fact to the other party with reason to believe that the other party will rely upon it; (2) the other party reasonably relies upon it; (3) to the party's detriment. *Kennedy v. U.S.*, 965 F.2d 413, 417 (7th Cir. 1992).

In the instant case, the facts are significantly more damning for FWF than those against the employer in *Dormeyer*, who simply failed to respond to the employee's FMLA request. Here, FWF granted in writing Allen's intermittent FMLA leave request not once, but twice: first for a month, then for an additional twelve months.  Moreover, FWF proceeded to record twenty-four absences in Allen's personnel record as excused FMLA leave after approving his request.  It is therefore clear that (1) FWF told Allen he could take intermittent FMLA leave, (2) Allen relied on that representation by incurring numerous FMLA absences rather than finding other assistance for his wife, and (3) if FWF is allowed this defense, Allen may suffer harm.  The last proposition arises in the sense that if FWF is allowed to disclaim Allen's eligibility, Allen would theoretically be subject to termination not only for his fatal January 6 absence, but also for the twenty-four absences FWF told Allen were FMLA-excused.[14]  Therefore, this is an appropriate case in which to apply the doctrine of equitable estoppel with respect to FWF's claim that Allen

---

[14]In an effort to show that FMLA eligiblity cannot be created through estoppel, FWF cites numerous cases that invalidate and make unenforceable certain FMLA regulations.  With this as a backdrop, FWF then tangentially argues that it "has no authority to change any law enacted by Congress, including, but not limited to, the FMLA." (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 13.)  It is hard to make sense of FWF's argument; their voluntary choice to afford greater benefits to its employees than the FMLA requires has no effect on any law or regulation.

was ineligible for FMLA benefits, *see Dormeyer*, 223 F.3d at 581-82, as FWF's conduct clearly induced detrimental reliance.

Therefore, FWF's argument that it cannot be liable because Allen was never eligible for FMLA benefits fails, as FWF is estopped from raising the affirmative defense of Allen's ineligibility.[15]  Nonetheless, as concluded *supra*, FWF's motion for summary judgment will be granted on the grounds articulated in Sections A and B of this opinion.

## V.  CONCLUSION

For the reasons given herein, Defendant's motion for summary judgment (Docket # 29) is hereby GRANTED.  The Clerk is directed to enter a judgment in favor of Defendant and against Plaintiff.  SO ORDERED.

Enter for this 26th day of September, 2005.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[15] FWF contends that because Allen failed to meet the FMLA statutory eligibility requirements, Allen's only available claim, if he has one at all, is under a breach of contract theory, further suggesting that Allen has not followed proper administrative procedures.  However, since the Court estopped FWF's use of the ineligibility defense, it need not fully analyze this argument other than to note that this defense would likely be unsuccessful under a breach of contract theory. *See Thomas v. Pearle Vision, Inc*., 251 F.3d 1132, 1136-37 (7th Cir. 2001) (concluding defendant's ineligibility argument was "disingenuous at best" where a provision in defendant's employee manual was considered to waive an FMLA eligibility requirement and afford plaintiff FMLA benefits, further commenting that defendant's problem resolution procedure, if mandatory, would arguably violate the FMLA by discouraging eligible employees from exercising their FMLA rights).